UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STACEY PYNN,

              Plaintiff,

      v.                                       24-CV-508-LJV
                                                 DECISION & ORDER

MATTHEW PYNN, *et al.*,

              Defendants.
_____

       The *pro se* plaintiff, Stacey Pynn, has filed a complaint asserting claims under 42 U.S.C. § 1983 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Docket Item 1.  She has moved to proceed *in forma pauperis* ("IFP")—that is, as a person who should have the prepayment of the ordinary filing fee waived because she cannot afford it—and has filed the required affidavit.  Docket Items 2 and 3.  She also has moved for a preliminary injunction and a temporary restraining order, Docket Item 4; for electronic filing privileges, Docket Item 5; for service by the United States Marshals Service, Docket Item 6; and for this Court to rule on her pending motions, Docket Item 8.

       Because Pynn meets the statutory requirements of 28 U.S.C. § 1915(a), *see* Docket Items 2 and 3, this Court grants her motion to proceed IFP.  But because this Court cannot exercise jurisdiction over Pynn's claims for a preliminary injunction and a temporary restraining order, her motion for that relief is denied.  Her motions for electronic filing privileges and service are denied as premature, and her motion for this Court to rule on the pending motions is denied as moot in light of this decision.  The Court defers screening the complaint under 28 U.S.C. § 1915(e)(2) at this time.

**FACTUAL BACKGROUND**

Pynn has sued more than 30 defendants—including her ex-husband, Matthew Pynn; the New York State Unified Court System; and a number of New York State judges and justices—for violating her rights under the New York State and United States Constitutions, RICO, and several criminal statutes. Docket Item 1. A liberal reading of the complaint tells the following story.[1]

In 2002, Pynn married Matthew Pynn,[2] an attorney who has been employed by Niagara County in various capacities for more than two decades. *Id.* at ¶¶ 70-71. The couple had four children together. *Id.* at ¶ 71. In 2013, Pynn "filed for divorce" in New York State Supreme Court, Niagara County. *Id.*

But "courts and child welfare agencies located in and around Niagara County . . . conspired to criminally cover up the severe child abuse and maltreatment committed by" Matthew Pynn. *Id.* at ¶ 72. Indeed, "[d]ue to the nature of his job as a Niagara County

---

[1] The following facts are taken from the complaint, including the state court records that Pynn attached to it. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (stating that a complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint" (citation and internal quotation marks omitted)). In evaluating the complaint, the court accepts all factual allegations as true and draws all inferences in Pynn's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). And because Pynn is proceeding *pro se*, the Court construes the complaint's allegations "liberally." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally." (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999))).

[2] Stacey Pynn is referred to as "Pynn," or occasionally for clarity's sake, as "Stacey Pynn." Matthew Pynn is referred to throughout this decision by his full name.

[p]ublic [d]efender," Matthew Pynn had become "well acquainted with judges, court officials[,] and court staffers," and through those contacts, he was able to "use[] . . . the [c]ourt system" to cover up his own criminal activities.  *Id.* at ¶¶ 34-37, 70.

Since 2013, a number of New York State Supreme Court Justices named as defendants have been assigned to Pynn's divorce case: Justice Catherine Nugent Panepinto,[3] Justice Richard Kloch, Justice Sara Sheldon, Justice Daniel J. Furlong, Justice Frank Caruso, and Justice Frank Sedita III.  *See id.* at ¶¶ 122-125, 129-132, 148-200.  Pynn says that each justice proved to be biased against her and part of a conspiracy to cover up Matthew Pynn's misconduct.  *See id.* at ¶¶ 122-200.  More specifically, the justices issued orders favoring Matthew Pynn, then recused themselves after Stacey Pynn brought to light each justice's conflict of interest.  *See id.*  The exception is Justice Sedita, who, "despite his obvious bias," has "refuse[d] to disqualify himself" from the case, even after Pynn filed several motions for his recusal.  *Id.* at ¶ 189; *see also id.* at ¶¶ 190-200 (detailing Justice Sedita's various unfair rulings and refusal to recuse himself).  Most notably, on December 3, 2021, Justice Sedita issued an order "preclud[ing Pynn] from filing any applications in the court without prior approval or an attorney."  *Id.* at ¶ 193.

Pynn has appealed at least some of the orders issued in the state proceedings, including the order barring her from filing unapproved applications *pro se*, to the New York State Supreme Court, Appellate Division, Fourth Department.  *See id.* at ¶¶ 169, 193, 195; *see also id.* at 101-120 (state court docket attached as an exhibit showing

---

[3] Although Pynn hyphenates the Justice's name, the Court takes judicial notice of the fact that the Justice's name is not in fact hyphenated.  The Clerk of the Court shall correct the case caption accordingly.

notices of appeal filed by Pynn).  The Fourth Department ruled in Pynn's favor on her appeal of an order issued by Justice Furlong and against her on her appeal of the filing injunction.  *See id.* at ¶¶ 169, 193, 195.  But at least one justice created "false 'orders' with an incorrect case index," which stymied Pynn's attempt to appeal those orders. *See id.* at ¶¶ 178, 264(c).

Pynn also has filed motions to change venue in the state court proceedings, but those motions were "consistently denied" by another defendant, Judge Kevin M. Carter, the administrative judge for New York State's Eighth Judicial District.  *Id.* at ¶ 123. Judge Carter also ignored Pynn's emails about missing evidence in the state court record.  *Id.* at ¶¶ 215-220.  Similarly, when Pynn complained to defendants Norman St. George, the first deputy chief administrative judge of the New York Court System, and Lawrence Marks, the former chief administrative judge of the New York Court System, about the actions of the judges and justices involved in her legal proceedings, Judge St. George and Judge Marks failed to undertake an "effective intervention."  *Id.* at ¶¶ 47-48, 266(h).  And the New York State Unified Court System and its "administrative arm," the New York State Office of Court Administration—both defendants here—have "refused to right the[se] wrong[s]," thus "obstruct[ing] justice."  *Id.* at ¶¶ 42-43, 255, 262.

Due to the bias of the New York State Supreme Court, Niagara County, Pynn has filed several actions in other courts "[i]n an[] attempt to obtain a fair forum."  *See, e.g.*, *id.* at ¶ 211.  In July 2016, Pynn filed a case in this Court against several of the same defendants named here, including Matthew Pynn, Niagara County Child Protective Services ("Niagara County CPS"), and the Niagara County Department of Social Services ("Niagara County DSS").  *Id.* at ¶ 226; *see Pynn v. Pynn*, Case No. 16-

4

cv-548, Docket Item 1 (W.D.N.Y. July 5, 2016).  Pynn alleged that the defendants in that case were "conspir[ing]" with various other individuals, including a New York State Supreme Court justice, to "protect" Matthew Pynn and "deprive [her] of custody of and access to her four minor children."  *Pynn*, Case No. 16-cv-548, Docket Item 6 at ¶ 2 (W.D.N.Y. Aug. 9, 2016) (amended complaint).  This Court dismissed that case for lack of subject matter jurisdiction.  *Id.*, Docket Item 108 (W.D.N.Y. Feb. 7, 2019).

Several years later, in September 2022, Pynn applied in Niagara County Family Court for a "[t]emporary [o]rder of [p]rotection for her[self] and her children" against Matthew Pynn.  Docket Item 1 at ¶ 201.  After "[a]ll [Niagara County] Family Court [j]udges . . . recused" themselves due to their "familiarity" with Matthew Pynn, defendant Judge Keith D. Kibler,[4] a family court judge from Wyoming County, was assigned to the matter.  *Id.* at ¶¶ 202-03.  Judge Kibler denied Pynn's application without affording her adequate due process and subsequently "refused to [recuse] himself" from the case "despite his obvious obligations to do so."  *Id.* at ¶ 207.

Pynn then asked for an "[e]mergency [t]emporary [o]rder of [p]rotection for her[self] and her children against . . . Matthew Pynn" in Erie County Family Court.  *Id.* at ¶ 211.  That case was dismissed and remanded to a court in Niagara County despite that court's "conflict[s ]of[ ]interest."  *Id.*  More recently, in January 2023, Pynn "commenced her own civilian criminal complaint[ against] Matthew Pynn" in Lockport City Court.  *Id.* at ¶ 224.  But Judge Carter and two of his employees—defendants Andrew Isenberg and Dean Puleo—"shielded the complaint from proceeding" as part of

---

[4] Pynn refers to "Judge Kibbler" and "Judge Kibler" throughout the complaint. *See* Docket Item 1.  The Court takes judicial notice of the fact that his name is spelled "Kibler."  The Clerk of the Court shall correct the case caption accordingly.

what Pynn calls the conspiracy to aid in and "cover[ ]up" Matthew Pynn's "child endangerment."  *Id.* at ¶¶ 50-51, 224-25.

Others involved in Pynn's legal proceedings or the underlying custody dispute also have been biased or corrupt.  For instance, the Niagara County Clerk's Office, Niagara County Clerk Joseph Jastrzemski, and Clerk's Office employee Lisa Kessler— all named as defendants here—did not ensure that the record in Pynn's divorce proceedings was entirely correct and complete.  *See id.* at ¶¶ 46, 57-58, 120-21, 177.  In addition, defendants Niagara County CPS and DSS and several of those entities' employees and representatives[5] failed to properly investigate and charge Matthew Pynn for committing child abuse.  *Id.* at ¶¶ 56, 59-63, 226-245.

Likewise, defendant David Nathanson, a "purported forensic psychologist" appointed by Justice Kloch in the state proceedings, "conspired to conceal the . . . sexual abuse" committed by Matthew Pynn by writing an incorrect and biased report. *See id.* at ¶¶ 65, 139-145.  Defendant Charles P. Ben similarly accepted an appointment as the Pynn children's attorney despite his prior working relationship with Matthew Pynn.  *See id.* at ¶¶ 165, 207, 269(d).  And finally, three New York State police officers—defendants Ronald Wilson, John Spero, and Stanley Edwards III—failed to "properly investigate" Matthew Pynn's sexual abuse.  *Id.* at ¶¶ 145-47.  In fact, Spero made "willful false statements that he did an investigation and [that] there was no

---

[5] More specifically, Pynn's complaint names the following individuals as defendants who failed to investigate and charge Mattew Pynn: CPS supervisor Bianca Gatto, former DSS attorney Nicholas D'Angelo, DSS attorney David Haylett, Jr., CPS caseworker Rhonda Platt, Niagara County attorney Claude Joerg, DSS Commissioner Meghan Lutz, and an unidentified CPS supervisor "Jane Doe."  *See* Docket Item 1 at ¶¶ 56, 58-63, 226-245; *id.* at 1, 63.

indication that [Matthew] Pynn ever acted in a manner that would be considered harmful to the welfare of his child." *Id.* at ¶ 146 (internal quotation marks omitted).

Pynn says that all defendants[6] have engaged in a conspiracy to "conduct[] a criminal enterprise involving the exploitation and abuse of minors"—including her four children—and to "cover up[]" that "criminal activity." *Id.* at ¶¶ 17-20.  She also says that the defendants, individually and together, violated her constitutional rights to due process, equal protection of law, and access to the courts.  *See* Docket Item 1 at 74-79, 81-85.

## LEGAL PRINCIPLES

"[A] plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest."  *Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490, 499 (S.D.N.Y. 2022) (quoting *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)).  "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*, 555 U.S. at 24.  "The standard for issuance of a temporary restraining order is identical to that for issuance of a preliminary injunction."  *Bimber's Delwood, Inc. v. James*, 496 F. Supp. 3d 760, 771 (W.D.N.Y. 2020).

---

[6] In addition to the defendants described here, Pynn also names as defendants "[o]ther Jane . . . and John Does," although she does not describe who those individuals are or provide any information about what they did that led her to bring claims against them.  *See* Docket Item 1 (internal quotation marks omitted).

## DISCUSSION

### I.   MOTION FOR INJUNCTIVE RELIEF

Pynn has asked this Court to "enter a preliminary injunction enforcing [her] First Amendment right of unrestricted access to New York State . . . courts" and to "enter a [t]emporary [r]estraining [o]rder[] in accordance with [Pynn's] Fifth Amendment [r]ight for a fair and impartial forum[] against all child welfare agencies and courts located in and around Niagara County."  Docket Item 4 at 1-2.  More specifically, she asks that courts in Niagara County as well as Niagara County CPS be enjoined "from maintaining [court] cases involving [Pynn] and her immediate family."  *Id.* at 30.  Further, she asks this Court to order that her proceedings be transferred to another state court or, "in the alternative, . . . to this . . . Court."  *Id.* at 2.  For the reasons that follow, the Court must abstain from exercising jurisdiction over any of Pynn's claims for a temporary restraining order or a preliminary injunction.

### A.   *Younger* Abstention

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court endorsed "a strong federal policy against federal[ ]court interference with pending state judicial proceedings" in certain circumstances.  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).  In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Court defined *Younger*'s scope, "clarify[ing] that district courts should abstain from exercising jurisdiction only in three 'exceptional circumstances,'" namely, when a plaintiff seeks federal court intervention in: "(1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform

their judicial functions.'" *Falco v. Justs. of the Matrimonial Parts of Supreme Ct.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Sprint*, 571 U.S. at 78).

"[W]hen *Younger* applies, abstention is mandatory[,] and its application deprives the federal court of jurisdiction in the matter." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002).  But *Younger* does not apply—and thus "a federal court may nevertheless intervene in a state proceeding"—"upon a showing of 'bad faith, harassment[,] or any other unusual circumstance that would call for equitable relief.'" *Id.* at 198 (quoting *Younger*, 401 U.S. at 54).  "[A] plaintiff who seeks to head off *Younger* abstention bears the burden of establishing that one of the exceptions applies."  *Id.*

Pynn asks this Court to grant a temporary restraining order and a preliminary injunction prohibiting the adjudication of her divorce and child custody proceedings in any court in Niagara County.  Docket Item 4.  As an initial matter, this Court notes that such proceedings clearly fall within the third category of cases from which this court must abstain under *Younger*.  *See Falco*, 805 F.3d at 427.  As the Second Circuit has explained, "the way that New York courts manage their own divorce and custody proceedings" is "a subject in which the state[] ha[s] an especially strong interest."  *Id.* (citation and internal quotation marks omitted).  Thus, a federal lawsuit that challenges a state court's orders in such a proceeding "fall[s] within *Sprint*'s third category: pending [s]tate civil proceedings involving orders 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  *Id.* (footnote omitted) (quoting *Sprint*, 571 U.S. at 78); *see also Skillings v. City of New York*, 2023 WL 8531493, at *5 (E.D.N.Y. Jan. 19, 2023) (noting that "[c]ourts in this Circuit routinely apply *Younger* abstention and dismiss claims seeking relief that, if granted, would undermine an ongoing state

court custody proceeding"); *Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*, 2022 WL 901660, at *15 (S.D.N.Y. Mar. 28, 2022), *appeal dismissed* (2d Cir. Sept. 21, 2022) (holding that *Younger* abstention applied to case in which plaintiff sought "declaration that the proceedings, orders, and judgments in [his state divorce proceeding] . . . were null and void" (alteration, citation, and internal quotation marks omitted)).

Further, Pynn's allegations do not suggest that any of the exceptions to *Younger* apply here. As noted, *Younger* abstention is inapplicable—and a federal district court may exercise jurisdiction—if the plaintiff makes a "showing of 'bad faith, harassment[,] or any other unusual circumstance that would call for equitable relief.'" *Diamond "D" Const. Corp.*, 282 F.3d at 198 (quoting *Younger*, 401 U.S. at 54). But as explained below, Pynn has failed to make any such showing here.

### 1.      Bad Faith or Harassment

To meet the "bad faith" or "harassment" exception, "the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Id.* at 199. Moreover, the federal plaintiff "must have no reasonable expectation of obtaining a favorable outcome." *Id.*

Pynn's complaint alleges that various justices, judges, and others involved in her state court divorce and child custody proceedings are biased against her, have violated her rights, and have otherwise caused her harm. *See* Docket Item 1. But she does not allege that the state proceedings themselves were *initiated* with any "harassing" or otherwise improper motive. *See id.* Nor could she: According to her own account, Pynn herself initiated the state court proceedings. *Id.* at ¶¶ 71, 201, 209, 224. So her

complaint is not with the initiation or even the existence of those proceedings; rather, it is with the way in which they have been conducted and decided. *See generally id.*

Courts have found that the "bad faith" or "harassment" exception is not satisfied under such circumstances. *See Glatzer v. Barone*, 394 F. App'x 763, 765 (2d Cir. 2010) (summary order) (exception to *Younger* inapplicable where "it was [the federal court plaintiff], not the state, who initiated all of the relevant state court proceedings"); *Rhee-Karn v. Burnett*, 2014 WL 4494126, at *6 (S.D.N.Y. Sept. 12, 2014) (federal court plaintiff who had herself "initiated the custody proceedings . . . c[ould ]not claim bad faith or harassment"); *see also Diamond "D" Const. Corp.*, 282 F.3d at 200 (holding that because federal plaintiff's "complaints concerning the [federal agency]'s delays in scheduling post-deprivation hearings and the amount of the [agency]'s withholdings, interest, and civil penalties [went] to the manner in which the administrative proceedings were conducted," those complaints were insufficient to show that "the . . . proceedings were brought with an intent to harass or any other illegitimate motive").

*Sobel v. Prudenti*, 25 F. Supp. 3d 340 (E.D.N.Y. 2014), which involved a set of facts somewhat similar to those here, is particularly illustrative. In that case, a federal plaintiff sought to enjoin state custody proceedings that had been brought by her children's father, "a wealthy pediatrician and businessman" and a "generous political contributor," *id.* at 344, 349, 356. Like Pynn, the plaintiff in *Sobel* alleged that the officials involved in the case were biased against her in various ways, had corrupted the state court record, and had violated her rights. *See id.* at 344-352. The district court found that *Younger* abstention applied, noting that the bad faith or harassment exception was not met because "the '[s]tate [c]ourt [a]ction was brought by [the

plaintiff's children's father], not by the [state d]efendants."  *Id.* at 356.  It further

explained that because "the [p]ending [s]tate [c]ourt [a]ction, and [the d]efendants' roles

in those proceedings, were legitimate in their purpose"—which was "to determine . . .

child custody and child support obligations"—"even [assuming the d]efendants'

execution of the state proceedings was unconstitutional to any degree, the bad faith or

harassment exception d[id] not apply."  *Id.*

        The same is true here:  Even if the state court justices—or anyone else—violated

her rights or otherwise behaved improperly, Pynn had not shown that the proceedings

themselves were brought in "bad faith" or to "harass" her.  Docket Item 1.  In fact, if

*Younger* abstention applied in *Sobel* where the plaintiff's spouse—and not the

defendants—commenced the underlying proceeding, then it certainly applies here

where Pynn herself initiated the proceedings about which she complains.

        Nor has Pynn shown that she has "no reasonable expectation of obtaining a

favorable outcome."  *Diamond "D" Cost. Corp.*, 282 F.3d at 199.  On the contrary, her

complaint alleges that she has previously appealed certain orders and that the Fourth

Department vacated at least one order; Pynn apparently has also successfully gotten a

number of justices to recuse themselves from the case.  *See, e.g.*, Docket Item 1 at

¶¶ 122-125, 129, 131, 150, 156, 161, 169, 182, 185-86, 263(b); *id.* at 101-120 (state

court docket showing Pynn's notices of appeal).  Under the circumstances, the Court

cannot find that Pynn has met the "bad faith" or "harassment" exception.

### 2.      Extraordinary Circumstances

        To meet the "extraordinary circumstances" exception, the federal plaintiff must

show that the "the state court [is] incapable of fairly and fully adjudicating the federal

issues before it." *Diamond "D" Cost. Corp.*, 282 F.3d at 201 (quoting *Kugler v. Helfant*,

421 U.S. 117, 124 (1975)).  As the Supreme Court has explained,

> [t]he very nature of "extraordinary circumstances," of course, makes it impossible
> to anticipate and define every situation that might create a sufficient threat of
> such great, immediate, and irreparable injury as to warrant intervention in state
> criminal proceedings.  But whatever else is required, such circumstances must
> be "extraordinary" in the sense of creating an extraordinarily pressing need for
> immediate federal equitable relief, not merely in the sense of presenting a highly
> unusual factual situation.

*Moore v. Sims*, 442 U.S. 415, 433 (1979) (citation omitted).  The Second Circuit has

identified "two predicates for application of this exception: (1) that there be no state

remedy available to meaningfully, timely, and adequately remedy the alleged

constitutional violation; and (2) that a finding be made that the litigant will suffer 'great

and immediate' harm if the federal court does not intervene."  *Rhee-Karn*, 2014 WL

4494126, at *6 (quoting *Diamond "D" Const. Corp.*, 282 F.3d at 201).

Pynn has not alleged that there is "no state remedy" available to her.  In the first

place, although she repeatedly alleges that the state court proceedings have been

"biased," most of her allegations are conclusory.  *See* Docket Item 1.  And such

conclusory allegations are not enough to show "extraordinary circumstances."  *See*

*Glatzer*, 394 F. App'x at 765-66 (extraordinary circumstances exception not met in case

in which plaintiff "repeatedly accuse[d] the [d]efendants of bias and 'extreme

resentment'" because he "alleged no facts to support those accusations apart from the

fact that the [d]efendants denied him the relief that he sought" (citation omitted)).

Moreover, to the extent that Pynn asserts that certain officials were biased

against her due to their relationship with Matthew Pynn, that still is not enough to show

that she lacks any adequate state remedy.  Again, Pynn already has availed herself of

the state appeals process, *see, e.g.*, Docket Item 1 at ¶ 165, 169, 263(b); *see also id.* at 101-120, and presumably may do so again.  Courts have found that litigants in similar circumstances did not lack an adequate state remedy.  *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011) (summary order) (holding that *Younger* abstention applied where federal plaintiff had not shown that he lacked an adequate state remedy and noting that "nothing precludes [the p]laintiff from raising [his] claims in a state appellate court at the conclusion of the [f]amily [c]ourt proceedings"); *Festinger*, 2022 WL 901660, at *15 n.27 (holding the *Younger* abstention applied where federal plaintiff had not alleged that he lacked a "state remedy" for "alleged constitutional violation[s]" in his state divorce proceedings). Indeed, Pynn says that she has been successful at least once in the Fourth Department.  *See* Docket Item 1 at ¶ 169.  And even if that were not so, New York's highest court, the New York Court of Appeals, can and must be given the opportunity to remedy any injustice.

The Second Circuit has made clear that "where . . . state remedies are available, 'a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" *Diamond "D" Const. Corp.*, 282 F.3d at 202 (quoting *Pennzoil v. Texaco*, 481 U.S. 1, 15 (1987)).  Pynn has not provided any reason for this Court to conclude that state procedures will be insufficient here.  She does say that the defendants have "promulgated false 'orders' with an incorrect case index so that they are not filed and cannot be appealed," and that evidence has been deleted from the official state court record.  *See* Docket Item 1 at ¶¶ 215-220, 264(c)-(d); *see id.* at ¶ 178.  But she does not explain how the orders about which she

complains can be effectuated if they are not filed.  More significantly, Pynn does not explain why she cannot present this argument to the New York State appellate courts—including the Court of Appeals—in the first instance, nor does she allege that she will be unable to bring her constitutional challenges in those courts.[7]

In sum, because Pynn asks this Court to intervene in "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions,'" *Falco*, 805 F.3d at 427—and because Pynn has not shown that "bad faith, harassment, or extraordinary circumstances" nonetheless render injunctive relief appropriate here, *Diamond "D" Constr. Corp.*, 282 F.3d at 198 (quoting *Younger*, 401 U.S. at 54)—the Court finds that *Younger* abstention applies.  And for that reason, this Court cannot exercise jurisdiction to enjoin the state proceedings as Pynn requests. *See id.* at 197.

---

[7] Because Pynn has not shown that she lacks an adequate state remedy, the Court need not and does not reach the question of whether she will "suffer 'great and immediate' harm" absent this Court's intervention.  *See Rhee-Karn*, 2014 WL 4494126, at *6 (quoting *Diamond "D" Const. Corp.*, 282 F.3d at 201).  But the Court notes that making such a showing would be difficult here.  Although the allegations that Pynn makes in the complaint are serious—and issues of child protection, abuse, and custody are undoubtedly weighty—the mere fact that such issues are involved does not render the circumstances "extraordinary" for *Younger* purposes.  *See Moore*, 442 U.S. at 434 (finding *Younger* abstention warranted in case brought to enjoin state court custody order and noting that not every order "issued to protect a child creates great, immediate, and irreparable harm warranting federal[ ]court intervention"); *Rhee-Karn*, 2014 WL 4494126, at *7 (stating that "it is difficult to see how [the p]laintiffs will suffer irreparable harm—that there will be more time during which they are wrongfully kept apart—if the custody proceedings come to a close and a final order is issued from which [the p]laintiffs may appeal as of right").

**B.    Alternative and Additional Grounds for Denying Injunctive Relief**

For the reasons stated above and under *Younger*, this Court cannot exercise

jurisdiction to intercede in Pynn's state proceedings.  The Court now addresses certain

specific requests for injunctive relief that Pynn makes in her motion for a temporary

restraining order and a preliminary injunction.  Docket Item 4.  More specifically, it

considers Pynn's request that this Court: (1) "provide . . . injunctive relief to enforce her

right to access the [state] courts, receive complete and accurate records, and file

applications [without restriction]," and (2) "transfer" her state proceedings to a court

outside Niagara County or to this Court.  *Id.* at 1-2, 30.

To the extent those requests seek intervention in ongoing state proceedings,

they are barred by *Younger* for the reasons already described.  To the extent that

Pynn's motion asks this Court to modify or issue any divorce or child custody order, this

Court must abstain from granting such relief under domestic relations abstention as

well.  And in the alternative, to the extent that Pynn's motion seeks review of any final

state court order, the Court lacks jurisdiction to grant her request under the *Rooker-*

*Feldman* doctrine.

**1.    Domestic Relations Abstention**

As the Second Circuit recently has explained:

> The existence of a distinct abstention doctrine for certain domestic relations
> disputes is supported by the Supreme Court's longstanding recognition—in
> a non-diversity case involving a child custody dispute—that "[t]he whole
> subject of the domestic relations of husband and wife, [and] parent and
> child, belongs to the laws of the states, and not to the laws of the United
> States."

*Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019) (alteration in original) (quoting

*In re Burrus*, 136 U.S. 586, 593-94 (1890)).  Although "the domestic relations exception

clearly does not apply in cases before this Court on federal question jurisdiction, not diversity," district courts "might nevertheless exercise domestic relations *abstention* where a litigant's claims are on the verge of being matrimonial in nature and where there is no obstacle to their full and fair determination in state courts." *Pappas v. Lorintz*, 832 F. App'x 8, 11-12 (2d Cir. 2020) (summary order) (citations and internal quotation marks omitted); *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (same); *see Deem*, 941 F.3d at 625 (noting that "*American Airlines* continues to be the law of this Circuit" and "affirm[ing] the district court's dismissal of [the plaintiff's] federal claims on abstention grounds").

Courts in this circuit have found abstention appropriate when the plaintiff asked a federal court to review and overturn state court rulings related to child custody and divorce. *See, e.g.*, *Dees v. Zurlo*, 2024 WL 2291701, at *4 (N.D.N.Y. May 21, 2024) (holding that "abstention [wa]s appropriate because [the p]laintiffs' complaint concerns family court disputes over custody, visitation, and protective orders" (emphasis omitted)); *Ortiz v. Tinnerello*, 2021 WL 11593793, at *5 (D. Conn. Jan. 20, 2021) ("Because this dispute centers on the custody of [the] plaintiff's child, a domestic matter generally within the purview of the [s]tate, this Court should abstain from exercising jurisdiction."). And while domestic relations abstention does not apply if the state court is incapable of "full[y] and fair[ly] determin[ing]" the issues, "conclusory statements accusing the state court of violating the Constitution without more do not establish an obstacle to . . . full and fair determination." *Evans v. Adams*, 2024 WL 306240, at *4 (E.D.N.Y. Jan. 26, 2024); *see Chapman v. Maycock*, 2021 WL 6091749, at *4 (E.D.N.Y. Dec. 23, 2021) (holding that "conclusory statements alleging family court's disregard of

the Constitution, or joint activity or conspiracy between [the d]efendant and family court referees, without more, [we]re not sufficient to show that [the plaintiff's] claims [we]re not capable of being resolved fairly in state court" (citation omitted)).

Here, domestic relations abstention bars at least some of the relief that Pynn seeks—namely, her requests that this Court review and overturn divorce and child custody orders entered in the state case, including by transferring those proceedings to this Court.  *See* Docket Item 4.  Those issues clearly are "on the verge of being matrimonial in nature" and thus within the purview of state, rather than federal, law.  *See Deem*, 941 F.3d at 623-25.  Moreover, although Pynn asserts that the state court proceedings have been biased and have violated her rights in any number of ways, *see* Docket Item 1, she has not shown that she will be unable to obtain a "full and fair determination" of her claims, including on appeal as necessary, *see Evans*, 2024 WL 306240, at *4 (plaintiff had not established existence of "an[] obstacle impeding the full and fair determination of his state court action" where he could "raise those constitutional claims in the state court, including on appeal if necessary"); *see also* Section I.A.2, *supra.*

In sum, the Court abstains from exercising jurisdiction over Pynn's requests that this Court review and overturn any child custody or divorce decrees entered in the state action not simply under *Younger* but also based on domestic relations abstention.

### 2.   *Rooker-Feldman*

Under the *Rooker-Feldman* doctrine—which is named for the two Supreme Court cases from which it derives—federal district courts have no appellate jurisdiction to review state court decisions.  *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct.*

*of App. v. Feldman*, 460 U.S. 462 (1983); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (noting that "[t]he [*Rooker-Feldman*] doctrine is rooted in the principle that appellate jurisdiction to reverse or modify a state[ ]court judgment is lodged exclusively in the [United States] Supreme Court" (alterations, citation, and internal quotation marks omitted)).   In other words, the *Rooker-Feldman* doctrine applies to cases "brought by state[ ]court losers complaining of injuries caused by state[ ]court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."   *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Second Circuit has "articulated a four-part test" for determining whether the *Rooker-Feldman* doctrine applies in a given case.   *Hunter v. McMahon*, 75 F.4th 62, 68 (2d Cir. 2023).   Under that test, a district court cannot exercise jurisdiction if: "(1) the federal[ ]court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Id.* (citation omitted).

The Second Circuit has stressed that "*Rooker-Feldman* applies only when the plaintiff complains of injuries caused by a state court judgment."   *Id.* at 71 (citation and internal quotation marks omitted).   That is, under *Rooker-Feldman*, a district court cannot exercise jurisdiction over claims of injury stemming "from a state[ ]court judgment, even if [the plaintiff] appears to complain only of a third party's actions, when th[ose] actions are produced by a state[ ]court judgment."   *Id.* (emphasis omitted).   But "*Rooker-Feldman* does not bar claims based on an opponent's misconduct that

precede[d] the state court proceeding[] if the plaintiff['s] alleged injuries were merely ratified by the state[ ]court judgment[] rather than caused by [it]." *Id.* (emphases omitted). In such cases, "the connection between the [relevant] state and federal cases" are governed by "the rules of preclusion, which are not jurisdictional." *Id.* at 72 (citation omitted).

As just noted, Pynn asks this Court "to provide . . . injunctive relief to enforce her right to access the [state] courts, receive complete and accurate records, and file applications [without restriction]." Docket Item 4 at 30. This appears to be an attempt to challenge the filing injunction imposed by New York State Supreme Court Justice Sedita. *See* Docket Item 1 at ¶ 193. Pynn appealed that order to the Fourth Department in January 2022. *Id.* at ¶ 195. It is not entirely clear from Pynn's complaint whether her appeal is ongoing, although it seems the Fourth Department decided it against her in July 2022. *Id.*; *see also id.* at 116 (state court records including July 14, 2022, docket entries).

If Pynn's appeal of the filing injunction is still ongoing, the Court abstains from exercising jurisdiction to review that order under *Younger* for the reasons already explained. But if the order was finalized prior to May 2024, when Pynn commenced this action, the Court lacks jurisdiction to review it under *Rooker-Feldman*, since Pynn, as the state court loser, would be seeking redress for an injury allegedly caused by a final state court judgment. *See* Docket Item 1 at ¶¶ 193, 195. And although Pynn's motion appears to ask this Court to enjoin only ongoing state court proceedings, the same logic applies to any other final state court orders that Pynn's motion asks this Court to review.

Because this Court must abstain from exercising jurisdiction over Pynn's request for injunctive relief under *Younger* and domestic relations abstention—or alternatively, under *Rooker-Feldman*—her motion for a temporary restraining order and a preliminary injunction, Docket Item 4, is denied.

## II.   OTHER MOTIONS

Pynn also has moved for permission to file documents electronically in this case, Docket Item 5, and for service by the United States Marshals Service, Docket Item 6. The Court addresses each of those motions in turn.

### A.   Motion for Electronic Filing Privileges

The Federal Rules of Civil Procedure provide that a *pro se* party "may file [documents] electronically only if allowed by court order or by local rule." Fed. R. Civ. P. 5(d)(3)(B)(i). The Western District of New York Local Rules of Civil Procedure incorporate by reference the Court's CM/ECF Administrative Procedures Guide, which, in turn, sets the requirements and provides the procedures for electronic filing. *See* Loc. R. Civ. P. 5.1(a). The Administrative Procedures Guide provides that "[t]ypically only registered attorneys, as Officers of the Court, will be permitted to file documents electronically." W.D.N.Y. Administrative Procedures Guide for Electronic Filing, amended October 2022. The Administrative Procedures Guide further allows the Court, "in [its] discretion, [to] grant a *pro se* litigant who demonstrates a willingness and capability to file documents electronically[] permission . . . to do so." *Id.*

The Court declines to exercise its discretion to grant Pynn electronic filing privileges at this time. While Pynn says that she has reviewed the requirements for electronic filing, *see* Docket Item 5, the case was only recently commenced, and this

Court has not yet even screened Pynn's complaint.  So at this early stage, the Court denies Pynn's request without prejudice. *See Miller v. Sacramento City Unified Sch. Dist.*, 2021 WL 3883916, at *2 (E.D. Cal. Aug. 31, 2021) (denying request for electronic filing privileges at motion to dismiss stage), *report and recommendation adopted*, 2021 WL 4804135 (E.D. Cal. Oct. 14, 2021).

> **B.      Motion for Service**

A plaintiff "authorized to proceed [IFP]" is entitled to a court order directing the United States Marshals Service or "a person specially appointed" to serve all process. Fed. R. Civ. P. 4(c); *see* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process . . . in [IFP] cases.").  Because the Court has granted Pynn's motion to proceed IFP here, she is entitled to have her complaint served by the United States Marshals Service with respect to any claims that survive screening under 28 U.S.C.§ 1915(e).  But because the Court has not yet screened Pynn's complaint, her motion for service is premature and therefore denied without prejudice.

> <u>**CONCLUSION**</u>

Because Pynn meets the statutory requirements of 28 U.S.C. § 1915(a), the Court GRANTS her request to proceed IFP, Docket Items 2 and 3.  But because this Court must abstain from exercising jurisdiction over Pynn's claims for a temporary restraining order and a preliminary injunction, her motion for that relief, Docket Item 4, is DENIED.  Pynn's motions for electronic filing privileges, Docket Item 5, and for service, Docket Item 6, are DENIED without prejudice as premature, and her motion for this

Court to rule on the pending motions, Docket Item 8, is DENIED as moot.  The Court defers screening Pynn's complaint under 28 U.S.C. § 1915(e)(2).

This Court hereby certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals *in forma pauperis* is denied.  *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.


        SO ORDERED.

Dated:          August 5, 2024
                Buffalo, New York


                                 */s/ Lawrence J. Vilardo*
                                 LAWRENCE J. VILARDO
                                 UNITED STATES DISTRICT JUDGE